**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:13-cv-258-RSP |
| | § | |
| APPLE INC., | § | |
| Defendant. | § § | |

**<u>APPLE INC.'S MOTION FOR JUDGMENT AS A MATTER OF LAW
REGARDING INVALIDITY</u>**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................ | 1 |
| II. | SAALFRANK ANTICIPATES CLAIM 10 OF THE 210 PATENT ......................... | 1 |
| | A. Saalfrank Discloses the Preamble of Claim 10 ....................................... | 2 |
| | B. Saalfrank Discloses Elements 1 and 3 of Claim 10 ............................... | 3 |
| | C. Saalfrank Discloses Elements 2 and 4 of Claim 10 ............................... | 3 |
| III. | REITBERGER ANTICIPATES CLAIM 1 OF THE 403 PATENT .......................... | 3 |
| | A. Reitberger Discloses the Preamble of Claim 1 ....................................... | 4 |
| | B. Reitberger Discloses Elements (a) and (b) of Claim 1 ........................... | 4 |
| | C. Reitberger Discloses Elements (c), (d), and (e) of Claim 1 ................... | 5 |
| IV. | PETROVIC ANTICIPATES CLAIM 1 OF THE 891 PATENT ............................... | 5 |
| V. | THE 210 AND 891 PATENTS ARE INVALID FOR FAILING TO PROPERLY LIST ALL INVENTORS ................................................................. | 7 |
| | A. The 210 Patent is Invalid for Improper Inventorship ........................... | 7 |
| | B. The 891 Patent is Invalid for Improper Inventorship ........................... | 8 |
| VI. | ZABARSKY ANTICIPATES CLAIM 8 OF THE 428 PATENT ............................. | 9 |
| VII. | KANE 635 ANTICIPATES CLAIMS 1 AND 8 OF THE 946 PATENT ................... | 10 |
| VIII. | WILL ANTICIPATES CLAIMS 19 OF THE 506 PATENT .................................... | 12 |
| IX. | WILL IN COMBINATION WITH UNICODE RENDERS OBVIOUS CLAIM 8 OF THE 506 PATENT ........................................................................ | 13 |
| X. | SCULLY ANTICIPATES CLAIMS 8 AND 10 OF THE 506 PATENT ................... | 14 |

## I. INTRODUCTION

Rule 50(a) provides for judgment as a matter of law where "a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." Fed. R. Civ. P. 50(a). Judgment as a matter of law should be granted unless the party opposing the motion has produced "substantial evidence" in support of each essential element of its claims. *See Am. Home Assurance Co. v. United Space Alliance*, 378 F.3d 482, 487 (5th Cir. 2004); *Anthony v. Chevron USA, Inc.*, 284 F.3d 578, 583 (5th Cir. 2002). A mere scintilla of evidence is insufficient to present a question for the jury. *Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 622 (5th Cir. 2008). After an accused infringer puts forth a *prima facie* case of invalidity, the burden of production shifts to the patent owner to produce sufficient rebuttal evidence. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013). Here, Apple met its burden of showing invalidity of the asserted claims and MTel failed to offer legally sufficient rebuttal evidence, such that no reasonable jury could find that the asserted claims are valid.

## II. SAALFRANK ANTICIPATES CLAIM 10 OF THE 210 PATENT

The Saalfrank patent publication (DX-31, DE 41 02 408 A1, "Saalfrank") is invalidating prior art to claim 10 of the asserted 210 Patent under 35 U.S.C. § 102(a). Saalfrank was published on August 6, 1992, which is before the November 12, 1992 priority date of the 210 Patent. *See* DX-31.002, .007; Tr. Tran. 11/14/2014 (afternoon) at 72:10-22. Each and every element of claim 10 of the 210 Patent is disclosed in Saalfrank. In light of the evidence presented at trial, no reasonable jury could conclude that claim 10 of the 210 Patent is not invalid as anticipated by Saalfrank, and Apple is entitled to judgment as a matter of law.

Inventor Mr. Hays and MTel's expert Dr. Vojcic confirmed that each of multicarrier modulation and simulcast was known in the art before the filing dates of MTel's patents. *See, e.g.*, Tr. Tran. 11/10/2014 (afternoon) at 132:24–133:5, 134:22-24; Tr. Tran. 11/12/2014 (afternoon) at 107:20-24. Dr. Vojcic testified that the purported invention of the 210 Patent was a combination of multicarrier modulation transmission and simulcast transmission. *See, e.g.*, Tr. Tran. 11/12/2014 (afternoon) at 21:8–22:6, 36:20–37:9. But, as shown below, the Saalfrank prior art discloses just that—a combination of multicarrier modulation and simulcast.

### A. Saalfrank Discloses the Preamble of Claim 10

Saalfrank discloses a "multi-carrier simulcast transmission system." Regarding a simulcast transmission system, Saalfrank discloses, for example, a system wherein "all transmitter stations simultaneously emit transmission signals with the same modulation content on the very same transmission frequency and/or the same carrier frequencies." DX-31.003 at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:13–24. Further, Saalfrank's simulcast transmission system is also a multi-carrier transmission system. For example, in Saalfrank's system "COFDM-method (Coded Orthogonal Frequency Division Multiplex) is provided as the transmission procedure." DX-31.003 at col. 2; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:25–75:2. Saalfrank also discloses that its "transmission signals" have "modulation content." DX-31.003 at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:25–75:5.

Saalfrank also discloses that its multi-carrier simulcast transmission system is "for transmitting in a desired frequency band at least one message contained in an information signal." For example, Saalfrank's transmitters transmit "transmission signals" that have a "transmission frequency," and that "[t]he data content of a program is not limited to radio signals but can also comprise partially or entirely information or control data (e.g., image transmission

2

or control data (e.g., image transmission or traffic control information))" (*i.e.*, messages). DX-31.003 at cols. 1, 2; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:21–75:13.

### B. Saalfrank Discloses Elements 1 and 3 of Claim 10

As discussed, Saalfrank discloses that its transmitter stations use multicarrier modulation, which discloses the claimed "first plurality of carrier signals within the desired frequency band, each of the first plurality of carrier signals representing a portion of the information signal substantially not represented by others of the first plurality of carrier signals." DX-31.003 at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 74:4-7, 75:14-22. Saalfrank also discloses that those carrier signals are generated and transmitted from a first transmitter station. *See id.*

### C. Saalfrank Discloses Elements 2 and 4 of Claim 10

As discussed, Saalfrank's plurality of transmitters transmit in simulcast with each other. "Transmitting…in simulcast" has been construed as "transmitting the same information at the same time." Therefore Saalfrank discloses a second transmitter that transmits in simulcast with the first—in other words, a second transmitter that generates and transmits "a second plurality of carrier signals within the desired frequency band, each of the second plurality of carrier signals corresponding to and representing substantially the same information as a respective carrier signal of the first plurality of carrier signals," as claimed. *See* DX-31.003 at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 74:8-12, 75:24–76:12.

## III. REITBERGER ANTICIPATES CLAIM 1 OF THE 403 PATENT

The Reitberger patent (DX-36, U.S. Pat. No. 5,218,717, "Reitberger") is invalidating prior art to claim 1 of the asserted 403 Patent under 35 U.S.C. § 102(e). Reitberger was filed on December 31, 1990, which is before the November 12, 1992 priority date of the 403 Patent. *See* DX-36.001; Tr. Tran. 11/14/2014 (afternoon) at 77:19-23. Each and every element of claim 1 of

the 403 Patent is disclosed in Reitberger. In light of the evidence presented at trial, no reasonable jury could conclude that claim 1 of the 403 Patent is not invalid as anticipated in view of Reitberger, and Apple is entitled to judgment as a matter of law.

### A. Reitberger Discloses the Preamble of Claim 1

Reitberger discloses a system with a plurality of transmitters spread out over a region of space, wherein the transmitters can be divided in two sets and can transmit during two different time periods. For example, Reitberger discloses a first time period when all the transmitters transmit both a wanted signal and an auxiliary signal in simulcast. *See* DX-36 at Abstract ("In a simulcast transmission system, a plurality of simulcast transmitters are spatially distributed throughout a broadcasting area, broadcast substantially at the same carrier frequency and are synchronously modulated with a wanted simulcast signal, at least two of the simulcast transmitters being simultaneously modulated with at least one further auxiliary signal…"); *id.* at 3:9-16; *see also* Tr. Tran. 11/14/2014 (afternoon) at 79:15-22, 80:10–81:7.

Reitberger also discloses a second time period when a first subset of transmitters transmits a new wanted signal, while a second subset of transmitters transmits the same new wanted signal and an additional message (such as a local warning message) via a new auxiliary signal. *See id.*

### B. Reitberger Discloses Elements (a) and (b) of Claim 1

Reitberger discloses these elements by disclosing the following: "a plurality of simulcast transmitters are provided to which wanted signals are supplied from a common control station via separate transmission paths and to which auxiliary signals are additionally supplied via these transmission paths…" DX-36 at 1:59-64; *see also* Tr. Tran. 11/14/2014 (afternoon) at 79:24-25; 81:8-23.

4

### C. Reitberger Discloses Elements (c), (d), and (e) of Claim 1

Reitberger discloses element (c) because, as discussed, during a first time period the transmitters of Reitberger's first and second subsets all transmit in simulcast a first block of information in a wanted signal. *See* DX-36 at Abstract; *id.* at 3:9-16; *see also* Tr. Tran. 11/14/2014 (afternoon) at 79:15–80:2, 81:24–82:7.

Reitberger discloses elements (d) and (e) because, as discussed, during a second time period the transmitters of the first subset transmit a second block of information in a new wanted signal, while the transmitters of the second subset transmit a third block of information in new auxiliary signal (*e.g.*, a local warning message). *See* DX-36 at Abstract; *id.* at 3:9-16; *see also* Tr. Tran. 11/14/2014 (afternoon) at 79:15–80:6, 82:8-20.

## IV. PETROVIC ANTICIPATES CLAIM 1 OF THE 891 PATENT

The publication "Permutation Modulation for Advanced Radio Paging" (DX-32, the "Petrovic Article") is invalidating prior art to claim 1 of the asserted 891 Patent under 35 U.S.C. § 102(b). *See* Tr. Tran. 11/14/14 (morning) at 143-147; Tr. Tran. 11/14/14 (afternoon) at 64-71; DX-32.537-540. The Petrovic Article was published April 6, 1993, which was more than two years before the filing date of the 891 Patent. Each and every element of claim 1 of the 891 Patent is disclosed in the Petrovic Article. In light of the evidence presented at trial, no reasonable jury could conclude that claim 1 of the 891 Patent is not invalid as anticipated by the Petrovic Article, and Apple is entitled to judgment as a matter of law.

Claim 1 of the 891 Patent has three elements: (1) "operating a plurality of paging carriers in a single, mask-defined bandlimited channel;" (2) "transmitting said carriers from the same location;" and (3) "said carriers having center frequencies within said channel such that the frequency difference between the center frequency of the outermost of said carriers and the band

edge of the mask-defined said channel is greater than the frequency difference between the center frequencies of each adjacent carrier." DX-3 at claim 1; Tr. Tran. 11/14/14 (afternoon) at 66:21–71:19. The Petrovic Article discloses all three of these elements. *See* Tr. Tran. 11/14/14 (afternoon) at 67:20–71:14.

The Petrovic Article discloses "operating a plurality of paging carriers in a single mask-defined, bandlimited channel"[1] because it discloses that "to fully utilize the allocated spectrum… we propose *eight subcarriers* spaced 5 kHz apart…." DX-32.537-540. Dr. Petrovic confirmed that the Petrovic Article discloses a plurality of carriers in a channel confined to a frequency range:

> Question: So essentially, Exhibit 29 calls for a proposal in which eight carriers are placed into a channel, correct?
>
> Answer: Correct.

Tr. Tran. 11/14/2014 (morning) at 146:23–147:1. Furthermore, Fig. 3 of the Petrovic Article illustrates eight carriers within a bandlimited channel. Tr. Tran. 11/14/2014 (afternoon) at 68:15–69:4.

The Petrovic Article also discloses the limitation of "transmitting said carriers from the same location." In particular, the Petrovic Article discloses that "[o]utputs of the subtransmitters are combined and sent to a common antenna." DX-32.538; Tr. Tran. 11/14/14 (afternoon) at 69:7-15.

Figure 1 of Dr. Petrovic's article discloses that "said carriers hav[e] center frequencies within said channel such that the frequency difference between the said carriers having center frequencies within said channel such that the frequency difference between the center frequency

---

[1] This Court has construed "single mask-defined, bandlimited channel" to mean "a channel confined to a frequency range."

6

of the outer most of said carriers and the band edge of the mask defining said channel is more than half the frequency difference between the center frequencies of each adjacent carrier," as claimed. DX-3 at claim 1. Figure 1 of the Petrovic Article discloses that the frequency difference between the center frequency of the outer most carrier and the band edge of the mask defining said channel is greater than the frequency difference between the center frequencies of each adjacent carrier, so it must also be greater than half the frequency difference between the center frequencies of each adjacent carrier. *See* Tr. Tran. 11/14/2014 (afternoon) at 69:16–71:9. Dr. Petrovic himself confirmed that the Petrovic Article discloses the third limitation:

> Q: So then if the size of the guard band is -- is greater than the spacing of the adjacent carriers, then the size of the guard band would also have to be greater than half the spacing of the adjacent carriers; is that correct?
>
> A: Of course, yes.

Tr. Tran. 11/14/2014 (morning) at 147:17-22.

## V. THE 210 AND 891 PATENTS ARE INVALID FOR FAILING TO PROPERLY LIST ALL INVENTORS

When an "invention" is "made by two or more persons jointly, they shall apply for [a] patent jointly." 35 U.S.C. § 116. If more or less than the true inventors are named, however, the patent is invalid. *Trovan Ltd. V. Sokymat Sa, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002). Because "[c]onception is the touchstone of inventorship," each joint inventor must generally contribute to the conception of the invention. *Burroughs Wellcome Co. v. Barr Lab., Inc.*, 40 F.3d 1223, 1227-28 (Fed. Cir. 1994).

### A. The 210 Patent is Invalid for Improper Inventorship

The 210 Patent is invalid because the evidence has shown that Dr. Rade Petrovic significantly contributed to the conception of claim 10 of the 210 Patent, but was not named an

7

inventor. No reasonable jury could conclude otherwise, and thus Apple is entitled to judgment as a matter of law.

As explained by both Apple's technical expert Mr. Lanning and MTel's technical expert Dr. Vojcic, multicarrier modulation is required by several elements of claim 10 of the 210 Patent. *See, e.g.*, DX-2 at claim 10 ("…generating a first ***plurality of carrier signals***…") (emphasis added); *see also* Tr. Tran. 11/12/14 (afternoon) at 22:4–24:6; Tr. Tran 11/14/14 (afternoon) at 60:21–61:4, 73:21–74:12.

Dr. Petrovic should have been a named inventor on the 210 Patent because he contributed to the conception of the multicarrier modulation elements of claim 10 of the 210 Patent. Dr. Petrovic testified that he conceived of the multicarrier modulation disclosure in the 210 Patent. Tr. Tran. 11/14/2014 (morning) at 138:7-141:13. Dr. Petrovic's testimony was corroborated by two of the named inventors on the 210 Patent. In particular, Mr. Hays testified that Dr. Petrovic "had a significant part" in "the multi-carrier modulation descriptions in the '210 and '403 patents." Tr. Tran. 11/10/2014 (afternoon) at 134:16-21. Mr. Cameron also testified that Dr. Petrovic contributed to "developing the multi-carrier modulation aspects" of the 403 and 210 Patents. Tr. Tran. 11/14/2014 Tr. (morning) at 149:10-14.

Apple's technical expert Mr. Lanning therefore concluded that Dr. Petrovic made a significant contribution to the conception of claim 10 of the 210 Patent, and therefore should have been named an inventor on the 210 Patent. Tr. Tran. 11/14/2014 (afternoon) at 63:5-12. Accordingly, the 210 Patent is invalid for failing to list Dr. Petrovic as an inventor.

### B. The 891 Patent is Invalid for Improper Inventorship

The 891 Patent is invalid because the evidence has shown that Dr. Rade Petrovic significantly contributed to the conception of claim 1 of the 891 Patent, but was not named an

inventor. No reasonable jury could conclude otherwise, and thus Apple is entitled to judgment as a matter of law.

As explained by Dr. Vojcic and Mr. Hays, claim 1 of the 891 Patent requires multicarrier modulation. Tr. Tran. 11/12/2014 (afternoon) at 12:22-14:2; Tr. Tran. 11/10/2014 (afternoon) at 133:10-3. Dr. Petrovic testified that the "most important" thing that he worked on with MTel was multicarrier modulation. Tr. Tran. 11/14/2014 (morning) at 137:11-15. Furthermore, Mr. Hays corroborated that Dr. Petrovic's multicarrier modulation contributions to MTel included the content disclosed in the 891 Patent:

> Q: And the '891 patent that Mr. Scardino asked you about, that also talks about multi-carrier modulation, right?
>
> A: It talks -- yeah, because we use that in our transmission. Yeah.
> …
> Q: And you also agree or you did also agree that the right person to talk about that material was Dr. Rade Petrovic, who you've mentioned here earlier, right?
>
> A: Yes.

Tr. Tran. 11/10/2014 (afternoon) at 133:10-134:3. Accordingly, the evidence shows that Dr. Petrovic contributed to the conception of the multicarrier modulation aspects of claim 1 of the 891 Patent.

**VI.     ZABARSKY ANTICIPATES CLAIM 8 OF THE 428 PATENT**

The Zabarsky patent (DX-112, U.S. Pat. No. 4,644,351, "Zabarsky") is invalidating prior art to claim 8 of the asserted 428 Patent under 35 U.S.C. § 102(b). The Zabarsky patent issued on February 17, 1987, which is more than one year before the filing date of the asserted 428 Patent. Each and every element of claim 8 of the 428 Patent is disclosed in the Zabarsky Patent. In light of the evidence presented at trial, no reasonable jury could conclude that claim 8 of the

428 Patent is not invalid as anticipated by Zabarsky, and Apple is entitled to judgment as a matter of law.

Apple's expert identified each and every limitation of claim 8 of the 428 Patent in Zabarsky. First, Zabarsky discloses a two-way communication system including the step of transmitting a data message from a network operations center to a mobile unit. Tr. Tran. 11/14/14 (morning) at 32:24–35:11; DX-112 at Fig. 2, 3:28-45. Second, Zabarsky discloses receiving at the network operations center a data acknowledgment message from the mobile unit acknowledging receipt of the data message. Tr. Tran. 11/14/14 (morning) at 35:13–36:5; DX-112 at 3:62-65. Third, Zabarsky discloses transmitting a polling sequence from the network operations center to the mobile unit, if after transmitting a data message to the mobile unit, no data acknowledgment message is received at the network operations center. Tr. Tran. 11/14/14 (morning) at 36:7–37:19; DX-112 at 7:16-23, 10:53-57. The polling sequence in Zabarksy is generated to locate a mobile unit. *Id.* In fact, Zabarksy explicitly discloses that "pager location is a key element in the operation of a personal message service." DX-112 at 10:53-57. Fourth, Zabarsky discloses marking a message as undelivered (*i.e.*, "missed") if no acknowledgment is received to the polling sequence (*i.e.*, probe message) and then storing the undelivered message. Tr. Tran. 11/14/14 (morning) at 38:1–39:12; DX-112 at 7:16-23, 10:46-52.

### VII. KANE 635 ANTICIPATES CLAIMS 1 AND 8 OF THE 946 PATENT

The Kane 635 Patent (DX-119, U.S. Pat. No. 5,315,635, "Kane 635") is invalidating prior art to claims 1 and 8 of the asserted 946 Patent under 35 U.S.C. § 102(e). The Kane 635 Patent was filed on September 30, 1992, which is before the September 21, 1993 filing date of the 946 Patent (and before the November 12, 1992 filing date of the application from which the application that led to the issuance of the 946 Patent was a continuation-in-part). Each and every

element of claims 1 and 8 of the 946 Patent is disclosed in Kane 635. In light of the evidence presented at trial, no reasonable juror could conclude that claims 1 and 8 of the 946 Patent are not invalid as anticipated by Kane 635, and Apple is entitled to judgment as a matter of law.

Claims 1 and 8 of the 946 Patent include the following elements:

| Claim Element | Limitation | Claim Element | Limitation |
| --- | --- | --- | --- |
| 1a | 1. A mobile unit for transmitting and receiving radio frequency signals to and from a communications network comprising: | 8a [analogous to 1a] | 8. A method for receiving and transmitting messages at a mobile unit, comprising the steps of: |
| 1b | means for receiving a radio frequency message from the network; | 8b [analogous to 1b] | receiving at the mobile unit a radio frequency message; |
| 1c | a display for displaying said message; | 8c [analogous to 1c] | displaying said message on the mobile unit; |
| 1d | a switch actuatable to specify a portion of the displayed message for which a user desires retransmission from the communications network; | 8d [analogous to 1d] | receiving an indication of a portion of the displayed message for which a user desires retransmission; |
| 1e | means for transmitting, only upon actuation of the switch, a signal to the communications network requesting retransmission of said specified portion of said message; and | 8e [analogous to 1e] | transmitting, only upon receipt of the indication, a signal requesting retransmission of said indicated portion of said message; |
| 1f | means for receiving said specified portion retransmitted from the communications network and for displaying the received specified portion on the display. | 8f and 8g [analogous to 1f] | receiving a retransmission of said indicated portion; and [g] displaying the received retransmission of said indicated portion on the mobile unit. |

Dr. Kelly identified each and every limitation of claims 1 and 8 in Kane 635. First, Dr. Kelly explained that the steps of claim 8 "correspond to the parts of the apparatus claim in Claim 1." Tr. Tran. 11/13/14 (afternoon) at 173:9-23. Dr. Kelly then explained how the limitations of both claims are disclosed in Kane 635. Specifically, Dr. Kelly testified that Kane 635 discloses a mobile unit for transmitting and receiving messages that includes a receiver

(including a paging receiver and a modem) and a display for displaying messages. Tr. Tran. 11/14/14 (morning) at 11:23-13:1; *id.* at 13:8-23 (citing DX-119 at 4:10-15, Fig. 1, 5:33-38). Dr. Kelly further explained that the user of the mobile unit can manipulate buttons or switches to request retransmission of a message block (which Dr. Kelly explained is a portion of a displayed message) and that the mobile unit will receive those retransmitted messages. Tr. Tran. 11/14/14 (morning) at 13:25-18:6 (citing DX-119 at 7:28-35, 15:67-16:8, 14:29-36 and DX-7 at 4:41-43). Thus, Dr. Kelly testified that it was his opinion that claims 1 and 8 of the 946 Patent are invalid as anticipated by Kane 635. Tr. Tran. 11/14/14 (morning) at 8:20-23; *id.* at 18:12-17 ("[B]efore we move on to the '428 patent, could you just confirm for me … how Claim 8, if at all, differs from Claim 1?  A. Well, Claim 8 covers the same subject matter, and so this Kane reference that invalidates Claim 1 also invalidates Claim 8 for the same reason.").

## VIII. WILL ANTICIPATES CLAIMS 19 OF THE 506 PATENT

The Will Patent (U.S. Patent No. 5,588,009) is invalidating prior art under U.S.C. § 102(e). The Will Patent was filed on February 3, 1994, more than two years before the filing date of the 506 Patent. Each and every element of claim 19 of the 506 Patent is disclosed in the Will Patent. Given the evidence presented at trial, no reasonable jury could conclude that claim 19 of the 506 Patent is not invalid as anticipated in view of the Will Patent.

Apple's expert identified each and every element of claim 19 of the 506 Patent in the Will Patent. Tr. Tran. 11/14/2014 (morning) at 101:7–109:12. First, the Will Patent discloses a message terminal for use in an electronic messaging network. DX-78 at Figures 32, 33; Tr. Tran. 11/14/2014 (morning) at 101:7–103:17. Second, the Will Patent discloses a memory storing a file of canned messages and message codes and a file of canned multiple response options and response codes. DX-78 at 12:62-65, 25:45-52, 26:36-40, 27:66-28:2, Figs. 3, 30, 33; Tr. Tran.

12

11/14/2014 (morning) at 102:18–109:9. Third, the Will Patent discloses means for retrieving the file of canned messages and the file of canned multiple response options from the memory. DX-78 at Figs. 3, 4, 32; Tr. Tran 11/14/2014 (morning) at 107:19–109:9. Fourth, the Will Patent discloses a display for displaying the canned messages and the multiple response options in the retrieved file. DX-78 at Figs. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 107:15-109:9. Fifth, the Will Patent discloses means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal. DX-78 at 2:57-60, Figs. 3, 4, 32, 33; Tr. Tran. 11/14/2014 (morning) at 102:18-109:12. Sixth, Will discloses a transmitter for transmitting the message code assigned to the selected canned message and the response code assigned to the at least one multiple response option over a communications link of the network. DX-78 at Fig. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 107:24-108:12. No reasonable jury could conclude that the Will Patent does not invalidate claim 19 of the 506 Patent. Accordingly, Apple is entitled to judgment as a matter of law.

### IX. WILL IN COMBINATION WITH UNICODE RENDERS OBVIOUS CLAIM 8 OF THE 506 PATENT

The testimony and accompanying exhibits of technical expert Robert Stillerman demonstrate that claim 8 of the 506 Patent is invalid as obvious in view of the Will Patent in combination with the Unicode Standard Version 1.0. The Unicode Standard Version 1.0 was published in 1991, and is therefore prior art under 35 U.S.C. § 102(b). No reasonable jury could conclude that claim 8 of the 506 Patent is not invalid as obvious in view of the Will Patent in combination with the Unicode Standard Version 1.0.

As explained by Apple's technical expert, the Will Patent in combination discloses each and every element of claim 8 of the 506 Patent. Tr. Tran. 11/14/2014 (morning) at 102:18-

113:21. First, the Will Patent discloses maintaining a file of canned messages and message codes at each of a first terminal, second terminal, and network operation center. DX-78 at 12:62-65, 25:45-52, 26:36-40, 27:66-28:2, Fig. 3, 30, 33; Tr. Tran. 11/14/2014 (morning) at 102:18-113:21. Second, the Will Patent discloses selecting an appropriate canned message from the second file for transmission to the second terminal. DX-78 at 25:45-52, 26:36-40, 27:66-28:2, Figs. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 102:18-113:21. Third, the Will Patent discloses sending the message code assigned to the selected canned message to the network operation center. DX-78 at 11:63-65, Figs. 3, 4, 12; Tr. Tran. 11/14/2014 (morning) at 102:18-113:21. Fourth, the Will Patent discloses retrieving a selected canned message from a file using an assigned message code. DX-78 at Figs. 3, 4, 32; Tr. Tran 11/14/2014 (morning) at 102:18-113:21. Fifth, the Will Patent describes displaying the selected canned message retrieved from the file of canned messages and message codes. DX-78 at Figs. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 102:18-113:21.

Furthermore, it is undisputed that relaying a code from one device to another by a network was known in the art before the 506 Patent. DX-66; DX-67; DX-114; Tr. Tran. 11/14/2014 (morning) at 77:14-82:11, 102:18-113:21. As Mr. Stillerman explained, it would have been obvious to one of ordinary skill in the art to use the known concept of relaying a code from one device to another as disclosed by the Unicode Standard Version 1.0 in conjunction with the communication system disclosed by Will. Tr. Tran. 11/14/2014 (morning) at 110:4-113:21.

## X.     SCULLY ANTICIPATES CLAIMS 8 AND 10 OF THE 506 PATENT

Claim 10 of the 506 Patent is invalid as anticipated by U.S. Patent No. 4,807,154 to Scully (the "Scully Patent") under MTel's infringement theory. The Scully Patent issued on February 21, 1989, and is therefore prior art under 35 U.S.C. § 102(b). Under MTel's

14

infringement theory, no reasonable jury could conclude that claims 8 and 10 of the 506 Patent are not invalid as anticipated by the Scully Patent, given the evidence presented at trial.

Under Dr. Nettleton's infringement theory regarding the 506 Patent, a canned message is the computer data stored in memory that corresponds to a graphical representation. Tr. Tran. 11/12/2014 (afternoon) at 127:12-131:13; Tr. Tran. 11/13/2014 (morning) at 106:22-109:9. Under this interpretation of the 506 Patent, the Scully Patent discloses each and every element of claims 8 and 10. First, the Scully Patent discloses maintaining a file of canned messages and message codes at each of a first terminal, second terminal, and network operation center. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. Second, the Scully Patent discloses selecting an appropriate canned message from a file for transmission to a second message terminal. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. Third, the Scully Patent discloses sending the message code assigned to the selected canned message to a network operation center. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. Fourth, the Scully Patent discloses relaying the message code assigned to the selected canned message from the network operation center to a second message terminal. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. Fifth, the Scully Patent discloses retrieving a selected canned message from a file using an assigned message code. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. Sixth, the Scully Patent discloses displaying the selected canned message retrieved from the file of canned messages and message codes. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. No reasonable jury could conclude that the Scully Patent does not anticipate claim 8 of the 506 Patent under MTel's infringement theory.

Claim 10 depends on claim 8 of the 506 Patent. Claim 10 further includes the requirement of adding a parameter to the canned message, sending the added parameter with the

assigned message code, relaying the added parameter with the assigned message code, and displaying the selected canned message with the added parameter incorporated therein. Under MTel's infringement theory of the 506 Patent, the Scully Patent also discloses all these elements. DX-83; Tr. Tran. 11/14/2014 (morning) at 117:6-120:23. No reasonable jury could conclude that the Scully Patent does not invalidate claim 10 of the 506 Patent under MTel's infringement theory, in light of the evidence presented at trial. Accordingly, Apple is entitled to judgment as a matter of law.

| | |
|---|---|
| Dated: November 17, 2014 | Respectfully submitted, |
| OF COUNSEL: | By: */s/ Anish R. Desai*___ |

Brian E. Ferguson
Anish R. Desai
David M. DesRosier
Christopher T. Marando
Megan H. Wantland
Christopher Pepe
WEIL GOTSHAL & MANGES LLP
1300 Eye Street NW, Suite 900
Washington, DC 20005
(202) 682-7000
(202) 857-0940 FAX
brian.ferguson@weil.com
anish.desai@weil.com

Garland Stephens
WEIL GOTSHAL & MANGES LLP
700 Louisiana, Suite 1700
Houston, TX 77002-2755
(713) 224-9511 FAX
garland.stephens@weil.com

Anne M. Cappella
Jill J. Schmidt
WEIL GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA 94065
(650) 802-3000
(650) 802-3100 FAX
anne.cappella@weil.com
jill.schmidt@weil.com

Eric H. Findlay
State Bar No. 00789886
Brian Craft
State Bar No. 04972020
FINDLAY CRAFT, P.C.
102 North College Avenue
Suite 900
Tyler, TX 75702
(903) 534-1100
(903) 534-1137 FAX
efindlay@findlaycraft.com
bcraft@findlaycraft.com

**COUNSEL FOR DEFENDANT APPLE INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 17, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send notification of such filing via electronic mail to all counsel of record.

Daniel R. Scardino, Esq.
Craig S. Jepson, Esq.
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622
MTELSamsungAppleTeam@reedscardino.com

Deron Dacus, Esq.
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel. and Fax: (903) 705-1117
ddacus@dacusfirm.com

*Attorneys for Mobile Telecommunications Technologies, LLC*

                                              */s/ Anish R. Desai*
                                              Anish R. Desai