**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | | |
|---|---|---|
| MOBILE TELECOMMUNICATIONS TECHNOLOGIES, LLC, | § § § | |
| Plaintiff, | § | |
| v. | § | Case No. 2:13-cv-258-RSP |
| | § | |
| APPLE INC., | § § | |
| Defendant. | § | |

**<u>APPLE INC.'S RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW
REGARDING INVALIDITY AND ALTERNATIVE MOTION FOR NEW TRIAL</u>**

# TABLE OF CONTENTS

I.      INTRODUCTION ................................................................................................. 1

II.     LEGAL BACKGROUND ..................................................................................... 1

III.    APPLE IS ENTITLED TO JMOL OF INVALIDITY OR,
        ALTERNATIVELY, A NEW TRIAL CONCERNING INVALIDITY ...................... 3

        A.      Saalfrank Anticipates Claim 10 of the 210 Patent ................................... 3

                1.      Saalfrank Discloses the Preamble of Claim 10 ........................... 4

                2.      Saalfrank Discloses Elements 1 and 3 of Claim 10 .................... 5

                3.      Saalfrank Discloses Elements 2 and 4 of Claim 10 .................... 5

                4.      MTel's Rebuttal Evidence Was Based On Nonexistent Claim
                        Limitations and Irrelevant Distinctions ..................................... 6

        B.      Reitberger Anticipates Claim 1 of the 403 Patent ................................... 8

                1.      Reitberger Discloses the Preamble of Claim 1 ........................... 8

                2.      Reitberger Discloses Elements (a), (b), and (c) of Claim 1 ....... 9

                3.      Reitberger Discloses Elements (d) and (e) of Claim 1 .............. 9

                4.      MTel's Only Rebuttal Was Based On a Nonexistent Claim
                        Limitation .................................................................................. 9

        C.      The Petrovic Article Anticipates Claim 1 of the 891 Patent ................ 11

                1.      The Petrovic Article Discloses All Three Elements of Claim 1 .............. 11

                2.      MTel's Only Rebuttal Was Based On a Nonexistent Claim
                        Limitation ................................................................................ 13

        D.      The 210 Patent is Invalid for Failing to Properly List All Inventors ................... 13

        E.      Zabarsky Anticipates Claim 8 of the 428 Patent .................................. 16

                1.      Zabarsky Discloses Each Element of Claim 8 ......................... 16

                2.      MTel's Only Rebuttal Was Based On Improper and Incorrect
                        Extrinsic Definitions ................................................................ 17

        F.      Kane 635 Anticipates Claims 1 and 8 of the 946 Patent ....................... 19

                1.      Kane 635 Discloses Each Element of Claims 1 and 8 ............. 19

                2.      MTel's Only Rebuttal Was Based On Nonexistent Claim
                        Limitations ............................................................................... 20

        G.      The Will Patent Anticipates Claim 19 of the 506 Patent ...................... 21

        H.      The Will Patent in Combination with Unicode Renders Claim 8 Obvious .......... 23

i

Pursuant to Rule 50(b) of the Federal Rules of Civil Procedure, Defendant Apple Inc. ("Apple") renews its motion for judgment as a matter of law ("JMOL") of invalidity, and alternatively moves for a new trial pursuant to Federal Rule of Civil Procedure 59(a).

## I.     INTRODUCTION

On November 17, 2014, the jury reached a verdict finding that Apple did not prove by clear and convincing evidence that claims 1 and 8 of U.S. Patent No. 5,754,946 ("the 946 Patent"), claim 8 of U.S. Patent No. 5,809,428 ("the 428 Patent"), claim 1 of U.S. Patent No. 5,590,403 ("the 403 Patent"), claim 1 of U.S. Patent No. 5,659,891 ("the 891 Patent"), and claim 10 of U.S. Patent No. 5,915,210 ("the 210 Patent") are invalid by anticipation. Dkt. 65.  The jury further found that Apple did not prove by clear and convincing evidence that claims 8, 10, and 19 of U.S. Patent No. 5,894,506 ("the 506 Patent") are invalid by anticipation or obviousness. *Id.*  The jury further found that Apple did not prove by clear and convincing evidence that the 210 Patent is invalid for improper inventorship.  *Id.*  Subsequently, the Court entered judgment on November 21, 2014 that these claims are not invalid.  Dkt. 79 ¶ 3.  Prior to the jury's verdict, Apple moved for JMOL of invalidity on several grounds.  Dkt. 54.  Apple now renews its motion for JMOL of invalidity on the grounds explained below.  Alternatively, Apple moves for a new trial concerning these issues because the jury's verdict is against the weight of the evidence, and/or because MTel presented prejudicial and confusing rebuttal evidence under improper constructions of certain claim terms.

## II.     LEGAL BACKGROUND

Once a verdict is reached and a judgment is entered, a party "may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59."  Fed. R. Civ. P. 50(b).  In ruling on a renewed JMOL, the Court may "order a new trial" or "direct the entry of judgment as a matter of law."  *Id.*  In determining whether to

grant or deny JMOL, the law of the regional circuit applies.  *See Colucci v. Callaway Golf Co.*, 748 F. Supp. 2d. 629, 631-32 (E.D. Tex. 2010).  Under Fifth Circuit law, the Court should grant JMOL if "the facts and inferences point so strongly and overwhelmingly in favor of one party that a reasonable jury could not have" arrived at a contrary verdict.  *See Armendariz v. Pinkerton Tobacco Co.*, 58 F.3d 144, 148 (5th Cir. 1995).  JMOL should be granted "if the jury's factual findings are not supported by substantial evidence or if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings."  *Am. Home Assur. Co. v. United Space Alliance, LLC*, 378 F.3d 482, 486-87 (5th Cir. 2004).

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), after a jury trial the Court may grant a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  A motion for new trial is decided under regional circuit law.  *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1361 (Fed. Cir. 1999) ("Because the denial of a motion for a new trial is a procedural issue not unique to patent law, we apply the law of the regional circuit where the appeal from the district court would normally lie."). In the Fifth Circuit, "[a] new trial may be granted, for example, if the district court finds the verdict is against the weight of the evidence, the damages awarded are excessive, the trial was unfair, or prejudicial error was committed in its course."  *Smith v. Transworld Drilling Co.*, 773 F.2d 610, 613 (5th Cir. 1985).  In evaluating whether a jury verdict is against the weight of the evidence, "the district court weighs all the evidence, but need not view it in the light most favorable to the nonmoving party."  *Id.*  Further, if the Court is not satisfied with the jury verdict, the Court "has the right—and indeed the duty—to set aside the verdict and order a new trial."  *Id.* (quotations omitted).

"A determination that a patent is invalid as anticipated under 35 U.S.C.A. § 102 requires

that a prior art reference disclose every limitation of the claimed invention, either explicitly or inherently." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 481 F.3d 1371, 1381 (Fed. Cir. 2007). "Obviousness under 35 U.S.C. § 103(a) is ultimately a legal question, based on underlying factual determinations." *Eisai Co. Ltd. v. Dr. Reddy's Laboratories, Ltd.*, 533 F.3d 1353, 1356 (Fed. Cir. 2008).   After an accused infringer puts forth a *prima facie* case of invalidity, the burden of production shifts to the patent owner to produce sufficient rebuttal evidence. *Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1322 (Fed. Cir. 2013).

### III.   APPLE IS ENTITLED TO JMOL OF INVALIDITY OR, ALTERNATIVELY, A NEW TRIAL CONCERNING INVALIDITY

At trial, Apple met its burden of showing invalidity of the asserted claims as discussed below, but plaintiff ("MTel") failed to offer legally sufficient rebuttal evidence.  For example, instead of addressing Apple's proof directly, MTel's rebuttal expert Dr. Kesan consistently based his validity opinions on improper claim constructions, immaterial distinctions, and assertions that the prior art actually discloses ***more*** than is required by the patent claims.   Such rebuttal "evidence" is legally irrelevant and insufficient to rebut Apple's evidence of invalidity, and no reasonable jury could have found the claims valid.   Should the Court disagree that Apple is entitled to JMOL on any of the issues set forth below, Apple alternatively moves for a new trial on any such issue(s) for the same reasons.

#### A.   Saalfrank Anticipates Claim 10 of the 210 Patent

The evidence presented at trial clearly showed that each and every element of claim 10 of the 210 Patent (DX-2) is disclosed in the Saalfrank patent publication (DX-31, DE 41 02 408 A1, "Saalfrank"), thereby anticipating claim 10.[1]   No reasonable jury could have concluded

---

[1] Saalfrank was published on August 6, 1992, before the November 12, 1992 priority date of the 210 Patent.  *See* DX-31.002, .007; Tr. Tran. 11/14/2014 (afternoon) at 72:10-22).  Saalfrank thus qualifies as prior art to the 210 Patent under 35 U.S.C. § 102(a), which MTel did not dispute.

otherwise.  MTel's expert Dr. Vojcic testified that the purported invention of the 210 Patent was simply a combination of multicarrier modulation transmission and simulcast transmission.  *See, e.g.*, Tr. Tran. 11/12/2014 (afternoon) at 21:8–22:6, 36:20–37:9.  As discussed in detail below and as the trial testimony shows, Saalfrank discloses precisely what claim 10 of the 210 Patent purports to cover—a combination of multicarrier modulation and simulcast.

### 1.      Saalfrank Discloses the Preamble of Claim 10

The evidence presented by Apple's expert Mr. Lanning shows that Saalfrank discloses a "multi-carrier simulcast transmission system" as recited by the preamble of claim 10 (DX-2, 210 Patent, at 34:45), for the following reasons.  First, Saalfrank meets the "multi-carrier" aspect of the preamble—in Saalfrank, "COFDM-method (Coded Orthogonal Frequency Division Multiplex) is provided as the transmission procedure" (DX-31.003 (Saalfrank) at col. 1), which Mr. Lanning explained is a type of multicarrier transmission system.  *See* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:25–75:2.  Second, regarding the preamble term "simulcast transmission system," Saalfrank discloses, for example, a system wherein "all transmitter stations ***simultaneously*** emit transmission signals with the ***same modulation content*** on the very same transmission frequency and/or the same carrier frequencies."[2]  DX-31.003 (Saalfrank) at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:13–24.  Saalfrank also discloses that its "transmission signals" have "modulation content."  DX-31.003 (Saalfrank) at col. 1; *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:25–75:5.

Third, Mr. Lanning also explained that Saalfrank discloses that its multi-carrier simulcast transmission system is "for transmitting in a desired frequency band at least one message contained in an information signal," as recited by the remainder of the preamble of claim 10.

---

[2] The Court construed "transmitting in simulcast" as "transmitting the ***same information*** at the ***same time***."

DX-2 (210 Patent) at 34:46-47.   For example, Saalfrank's transmitters transmit "transmission signals" that have a "transmission frequency."   DX-31.003 (Saalfrank) at col. 1.   These signals are messages.  *See id.* at col. 2.   ("[t]he data content of a program is not limited to radio signals but can also comprise partially or entirely information or control data (e.g., image transmission or control data (e.g., image transmission or traffic control information))"); *see also* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:3, 74:21–75:13.

### 2.      Saalfrank Discloses Elements 1 and 3 of Claim 10

As already discussed, the trial evidence shows that Saalfrank's transmitter stations use multicarrier modulation, which discloses "generating a first plurality of carrier signals within the desired frequency band, each of the first plurality of carrier signals representing a portion of the information signal substantially not represented by others of the first plurality of carrier signals," as recited by the first element of claim 10.   DX-2 (210 Patent) at 34:49-53, 34:59-60; *see* DX-31.003 (Saalfrank) at col. 1; Tr. Tran. 11/14/2014 (afternoon) at 74:4-7, 75:14-22.   The testimony at trial also established that Saalfrank discloses that those carrier signals are then transmitted from a first transmitter station, as recited by the third element of claim 10.  *See id.*

### 3.      Saalfrank Discloses Elements 2 and 4 of Claim 10

As discussed, Saalfrank's transmitters simulcast with each other.   The Court construed "transmitting…in simulcast" as "transmitting the same information at the same time." Therefore, as Mr. Lanning testified, Saalfrank discloses first and second transmitters that transmit in simulcast—in other words, a second transmitter that generates "a second plurality of carrier signals within the desired frequency band, each of the second plurality of carrier signals corresponding to and representing substantially the same information as a respective carrier signal of the first plurality of carrier signals," as recited by the second element of claim 10.  *See* DX-2 (210 Patent) at 34:54-58, 61-64; *see also* DX-31.003 (Saalfrank) at col. 1; Tr. Tran.

11/14/2014 (afternoon) at 74:8-12, 75:24–76:12.  The first and second plurality of carrier signals

are then transmitted in simulcast to satisfy the fourth element of claim 10.  *See id.*

### 4.       MTel's Rebuttal Evidence Was Based On Nonexistent Claim Limitations and Irrelevant Distinctions

The rebuttal testimony by MTel's expert Dr. Kesan regarding the 210 Patent is very

limited and consists only of unsupported, conclusory statements legally insufficient to rebut

Apple's evidence of invalidity.  *See* Tr. Tran. 11/17/2014 (morning) at 37-41.  Furthermore, the

purported differences between Saalfrank and the 210 Patent that Dr. Kesan pointed out have no

bearing on the limitations of claim 10 of the 210 Patent.

Dr. Kesan's first argument related to the requirement in claim 10 of "a first plurality of

carrier signals," where "each of the first plurality of carrier signals represent[s] a portion of the

information signal substantially not represented by others of the first plurality of carrier signals."

DX-2 (210 Patent) at 34:49-53.  Specifically, Dr. Kesan testified that "[t]he Saalfrank reference

does not teach that the subcarriers have to have different information."  Tr. Tran. 11/17/2014

(morning) at 37:25–38:2; *see also* 39:1-9, 39:21–40:1.  Dr. Kesan's unsupported, conclusory

statement is insufficient to rebut Mr. Lanning's particularized testimony as to how this limitation

is met.  Mr. Lanning explained that Saalfrank's system uses a form of multicarrier modulation

(COFDM), which by definition means that a message is transmitted using multiple subcarriers

that each carry different information.  *See* Tr. Tran. 11/14/2014 (afternoon) at 73:24–74:7,

74:25–75:2, 75:14-22.  Dr. Kesan did not offer any evidence to rebut Mr. Lanning's testimony.

Second, Dr. Kesan argued that "[i]n the 210 Patent, the frequencies from the two

transmitters have to ***correspond*** to each other," which he interpreted to mean that the carrier

signals "could be slightly offset."  *See* Tr. Tran. 11/17/2014 (morning) at 39:10-20.  On this

basis, Dr. Kesan concluded that identical carrier frequencies from the two transmitters in

Saalfrank do not anticipate.  *Id*.  This argument fails for two reasons.  First, claim 10 of the 210 patent simply does not contain any requirement that any ***frequencies*** "correspond" to each other.  At most, claim 10 requires corresponding ***signals***, not frequencies.  *See* DX-2 (210 Patent) at 34:55-58.  Second, even if the "corresponding" signals of claim 10 "***could*** be slightly offset," there is simply no requirement that they ***must*** be offset.  Claim 10, as a matter of law, does not exclude Saalfrank's undisputedly identical signals—nor did Dr. Kesan argue that the claim is so limited to exclude identical signals.  Accordingly, it was improper for him to argue that Saalfrank does not anticipate because Saalfrank's carrier signals are identical.  Indeed, the claims, claim construction, and file history would not support such a narrow view of the claim.

Dr. Kesan's final argument was that Saalfrank does not anticipate because the transmitters transmit unique identification information in addition to the data simulcasted by all transmitters.  *See* Tr. Tran. 11/17/2014 (morning) at 40:2-16.  This argument was incorrect as a matter of law because claim 10 of the 210 Patent does not prohibit the transmission of other information in addition to the information being transmitted in simulcast.  Rather, claim 10 only requires that two transmitters transmit a particular message in simulcast.  There is simply no dispute that Saalfrank discloses two transmitters sending the same information at the same time (*i.e.*, in simulcast).  *See id.* at 38:5-9.  The fact that Saalfrank discloses additional operations performed by the transmitters is irrelevant to the issue of anticipation.

Apple therefore met its burden of showing how Saalfrank anticipates claim 10 of the 210 Patent, and MTel did not offer sufficient evidence to rebut that showing.  No reasonable jury could have found claim 10 of the 210 Patent valid over Saalfrank, and Apple is entitled to JMOL.  Apple alternatively moves for a new trial because the jury's verdict was against the

weight of the evidence and Dr. Kesan's legally irrelevant arguments unfairly and improperly confused the jury concerning the required elements of claim 10 of the 210 Patent.

### B.    Reitberger Anticipates Claim 1 of the 403 Patent

The evidence presented at trial clearly showed that each and every element of claim 1 of the 403 Patent (DX-1) is disclosed by the Reitberger patent (DX-36, U.S. Pat. No. 5,218,717, "Reitberger"), thereby invalidating claim 1.[3]   No reasonable jury could have concluded otherwise.  As explained below, MTel's only rebuttal to the Reitberger reference is not based on a limitation of claim 1 of the 403 Patent.

### 1.    Reitberger Discloses the Preamble of Claim 1

MTel's expert Dr. Kesan did not dispute that Reitberger discloses the preamble of claim 1 of the 403 Patent.  *See* Tr. Tran. 11/17/2014 (morning) at 34:5–36:24.  Apple's expert Mr. Lanning explained that Reitberger discloses a system with a plurality of transmitters distributed over a geographic area, wherein the transmitters can be divided in two sets and where each set can transmit during two different time periods, as recited by the preamble.  *See* DX-1 (403 Patent) at 33:11-17.  For example, Reitberger discloses a first time period when all the transmitters transmit both a wanted signal and an auxiliary signal in simulcast.  *See* DX-36 (Reitberger) at Abstract ("In a simulcast transmission system, a plurality of simulcast transmitters are spatially distributed throughout a broadcasting area, broadcast substantially at the same carrier frequency and are synchronously modulated with a wanted simulcast signal, at least two of the simulcast transmitters being simultaneously modulated with at least one further auxiliary signal…"); *id.* at 3:9-16; *see also* Tr. Tran. 11/14/2014 (afternoon) at 79:15-22, 80:10–

---

[3] Reitberger was filed on December 31, 1990, which is before the November 12, 1992 priority date of the 403 Patent.  *See* DX-36.001; Tr. Tran. 11/14/2014 (afternoon) at 77:19-23.  Thus Reitberger qualifies as prior art to the 403 Patent under 35 U.S.C. § 102(e), which MTel did not dispute.

81:7.  Reitberger also discloses a second time period when a first subset of transmitters transmits a new wanted signal, while a second subset of transmitters transmits the same new wanted signal and an additional message (such as a local warning message) via a new auxiliary signal.  *See id.*

## 2.    Reitberger Discloses Elements (a), (b), and (c) of Claim 1

MTel's expert Dr. Kesan did not dispute that Reitberger discloses elements (a), (b), and (c) of claim 1 of the 403 Patent.  *See* Tr. Tran. 11/17/2014 (morning) at 34:5–36:24.  Mr. Lanning testified that Reitberger discloses elements (a) and (b) because it discloses generating and transmitting wanted and auxiliary signals to transmitters: "a plurality of simulcast transmitters are provided to which wanted signals are supplied from a common control station via separate transmission paths and to which auxiliary signals are additionally supplied via these transmission paths…"  DX-36 (Reitberger) at 1:59-64; Tr. Tran. 11/14/2014 (afternoon) at 79:24-25; 81:8-23.  Mr. Lanning explained that Reitberger discloses element (c) because, during a first time period, Reitberger's first and second subsets of transmitters all simulcast a first block of information in a wanted signal.  *See* DX-36 (Reitberger) at Abstract; *id.* at 3:9-16; Tr. Tran. 11/14/2014 (afternoon) at 79:15–80:2, 81:24–82:7; *see also* DX-1 (403 Patent) at 33:23-25.

## 3.    Reitberger Discloses Elements (d) and (e) of Claim 1

Reitberger discloses elements (d) and (e) because, during the second time period, the first subset of transmitters transmits a second block of information in a new wanted signal, while the second subset of transmitters transmits a third block of information in new auxiliary signal (*e.g.*, a local warning message).  *See* DX-36 (Reitberger) at Abstract; *id.* at 3:9-16; Tr. Tran. 11/14/2014 (afternoon) at 79:15–80:6, 82:8-20; *see also* DX-1 (403 Patent) at 33:26-30.

## 4.    MTel's Only Rebuttal Was Based On a Nonexistent Claim Limitation

Dr. Kesan's rebuttal testimony regarding claim 1 of the 403 Patent is based on a nonexistent claim limitation.  *See* Tr. Tran. 11/17/2014 (morning) at 34-36.  Specifically, Dr.

Kesan improperly interjected a "non-simulcast mode" limitation into the claims in an attempt to avoid invalidity.

As discussed above, Dr. Kesan only disputed whether Reitberger discloses elements (d) and (e) of claim 1.  Dr. Kesan was asked, "What's your opinion with whether or not Reitberger anticipates any claim of the 403 Patent?"  *Id.* at 36:14-15.  He answered, "Yeah.  Reitberger does not anticipate claim 1 of the 403 Patent, because it doesn't meet the limitations.  It doesn't have the two modes.  It doesn't have a simulcast and non-simulcast mode, and those are all very explicitly required by the claim."  *Id.* at 36:16-20; *see also id.* at 34:14-16 ("…claim 1 of the 403 Patent requires that you have a first time period where you simulcast, and then you have a second time period that you don't simulcast."); 34:24–35:1 ("Q. So with -- are you saying that the Reitberger patent doesn't do steps (d) and (e)?  A. Exactly correct.").

But claim 1 of the 403 Patent does not ***require*** a "***non***-simulcast" mode.  *See* DX-1 (403 Patent) at 33:11-30.  Steps (d) and (e) (regarding the claimed "second time period") are silent on whether simulcast can be used.  Those elements certainly do not ***prohibit*** simulcast.  Nor did Dr. Kesan present any evidence that arguments were made during prosecution limiting the scope of those limitations.  Thus, Dr. Kesan improperly narrowed the claim to avoid a finding of invalidity.  *See, e.g.*, *Verdegaal Brothers, Inc.*, *v. Union Oil Company of California*, 814 F.2d 628, 632 (Fed. Cir. 1987) ("[T]here is no limitation in the subject claims with respect to the rate at which sulfuric acid is added, and, therefore, it is inappropriate for Verdegaal to rely on that distinction.").  This was the sole argument presented by MTel in rebuttal to Apple's evidence that claim 1 of the 403 Patent is invalid in view of Reitberger.

Accordingly, Apple met its burden of showing that Reitberger anticipates claim 1 of the 403 Patent, which MTel failed to rebut.  No reasonable jury could have found claim 1 of the 403

Patent valid over Reitberger, and Apple is entitled to JMOL.  Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence and Dr. Kesan's legally irrelevant arguments unfairly and improperly confused the jury.

### C.     The Petrovic Article Anticipates Claim 1 of the 891 Patent

The evidence presented at trial clearly showed that each and every element of claim 1 of the 891 Patent (DX-3) is disclosed by the publication "Permutation Modulation for Advanced Radio Paging" (DX-32, the "Petrovic Article"), thereby invalidating claim 1.  *See* Tr. Tran. 11/14/14 (morning) at 143-147; Tr. Tran. 11/14/14 (afternoon) at 64-71; DX-32.537-540.  No reasonable jury could have concluded otherwise.  As explained below, MTel's only counterargument was again based on a nonexistent claim limitation.

### 1.     The Petrovic Article Discloses All Three Elements of Claim 1

The first element of claim 1 provides: "[a] method of operating a plurality of paging carriers in a single mask-defined, bandlimited channel."[4]  DX-3 (891 Patent) at 6:4-5.  MTel did not dispute that the Petrovic Article discloses this element.  *See* Tr. Tran. 11/17/2014 (morning) at 45:15–49:5.  Apple's expert's testimony shows that the Petrovic Article discloses this element because the Petrovic Article discloses that "to fully utilize the allocated spectrum… we propose *eight subcarriers* spaced 5 kHz apart…."  DX-32.537; Tr. Tran. 11/14/14 (afternoon) at 68:2-69:6.  Even Dr. Petrovic himself confirmed that the Petrovic Article discloses a plurality of carriers in a channel confined to a frequency range:

Q:  So essentially, Exhibit 29 [Petrovic Article] calls for a proposal in which eight carriers are placed into a channel, correct?

A:  Correct.

Tr. Tran. 11/14/2014 (morning) at 146:23–147:1.

---

[4] The Court construed "single mask-defined, bandlimited channel" to mean "a channel confined to a frequency range."

The second element of claim 1 of the 891 Patent requires "transmitting said carriers from the same location." MTel did not dispute that the Petrovic Article discloses this element. *See* Tr. Tran. 11/17/14 (morning) at 45:15–49:5. Apple's expert explained that the Petrovic Article discloses this element by stating that "[o]utputs of the subtransmitters are combined and sent to a common antenna." DX-32.538; Tr. Tran. 11/14/14 (afternoon) at 69:7-15.

The third element of claim 1 requires that "said carriers hav[e] center frequencies within said channel such that the frequency difference between the center frequency of the outermost of said carriers and the band edge of the mask defining said channel is more than half the frequency difference between the center frequencies of each adjacent carrier." DX-3 (891 Patent) at claim 1. Both Apple's expert Mr. Lanning and MTel's expert Dr. Kesan summarized this claim element as requiring that A (the frequency difference between the center frequency of the outer most of said carriers and the band edge of the mask defining said channel) be greater than B divided by 2 (half the frequency difference between the center frequencies of each adjacent carrier), or A > B/2. Tr. Tran. 11/14/14 (afternoon) at 69:16–70:14 (Apple's expert); Tr. Tran. 11/17/14 (morning) at 45:15–46:16 (MTel's expert).

The Petrovic Article defines B to be 5. DX-32.537 (…we propose eight subcarriers spaced 5 kHz apart….); Tr. Tran. 11/14/14 (afternoon) at 70:15-23. And as Mr. Lanning explained, Figure 1 of the Petrovic Article discloses that A is greater than B divided by 2. *See* Tr. Tran. 11/14/14 (afternoon) at 69:16–71:9. MTel's rebuttal testimony concerning the Petrovic Article was consistent with Mr. Lanning's explanation. In particular, Dr. Kesan admitted that the Petrovic article discloses that A is equal to 9, and that the Petrovic Article also discloses that B is equal to 5. Tr. Tran. 11/17/14 (morning) at 62:23–63:5. Because nine (A) is greater than five (B) divided by two, the Petrovic Article discloses the third element of claim 1 of the 891 Patent.

### 2.      MTel's Only Rebuttal Was Based On a Nonexistent Claim Limitation

The only limitation of claim 1 of the 891 Patent that MTel's expert argued was absent from the Petrovic Article was the third limitation (*i.e.*, A is greater than B divided by 2). Although Dr. Kesan admitted that the Petrovic Article discloses both parameters required by the third limitation of claim 1 (*i.e.*, A = 9 and B =5) as explained above, Dr. Kesan appeared to argue that the Petrovic Article does not anticipate claim 1 because Figure 1 of the Petrovic Article discloses that only four of the eight carriers are turned on.   Tr. Tran. 11/17/14 (morning) at 63:15-22.   But Dr. Kesan admitted on cross examination that there is no such requirement in claim 1.  *See* Tr. Tran. 11/17/14 (morning) at 66:1-9 ("...It just simply has to meet the condition in the claim, and the claim doesn't discuss whether the paging carriers are turned off or on…."). Accordingly, MTel's only rebuttal argument is entirely based on a nonexistent claim limitation, which is legally insufficient to overcome Apple's showing of invalidity.  *See, e.g.*, *Verdegaal Brothers, Inc.*, 814 F.2d at 632 (Fed. Cir. 1987) ("[T]here is no limitation in the subject claims with respect to the rate at which sulfuric acid is added, and, therefore, it is inappropriate for Verdegaal to rely on that distinction.").

Apple met its burden of proving that the Petrovic Article anticipates claim 1 of the 891 Patent, and MTel's only rebuttal evidence is irrelevant.   Thus, no reasonable jury could have found claim 1 of the 891 Patent valid over the Petrovic Article, and Apple is entitled to JMOL. Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence and Dr. Kesan's legally irrelevant arguments unfairly and improperly confused the jury concerning the required elements of claim 1 of the 891 Patent.

### D.      The 210 Patent is Invalid for Failing to Properly List All Inventors

When an "invention" is "made by two or more persons jointly, they shall apply for [a] patent jointly."  35 U.S.C. § 116.  If more or fewer than the true inventors are named, however,

the patent is invalid.  *Trovan Ltd. v. Sokymat Sa, Irori*, 299 F.3d 1292, 1301 (Fed. Cir. 2002).

"[A] joint inventor must contribute in some significant manner to the conception of the invention."  *Fina Oil & Chem. Co. v. Ewen*, 123 F.3d 1466, 1473 (Fed. Cir. 1997).  However, "[o]ne need not alone conceive of the entire invention, for this would obviate the concept of joint inventorship."  *Id.*  The 210 Patent is invalid because the evidence showed that Dr. Rade Petrovic significantly contributed to the conception of the multicarrier modulation aspects of claim 10 of the 210 Patent, but he is not a named inventor.  As set forth below, MTel's only rebuttal arguments were legally irrelevant and thus insufficient to overcome Apple's showing.

Both Apple's expert Mr. Lanning and MTel's expert Dr. Vojcic explained that multicarrier modulation is required by several elements of claim 10 of the 210 Patent.  *See, e.g.*, DX-2 at claim 10 ("…generating a first ***plurality of carrier signals***…"); *see also* Tr. Tran. 11/12/14 (afternoon) at 22:4–24:6; Tr. Tran 11/14/14 (afternoon) at 60:21–61:4, 73:21–74:12.  Indeed, MTel's expert Dr. Vojcic testified that the purported invention of the 210 Patent was a combination of multicarrier modulation transmission and simulcast transmission.  *See, e.g.*, Tr. Tran. 11/12/2014 (afternoon) at 21:8–22:6, 36:20–37:9.

Dr. Petrovic should have been a named inventor on the 210 Patent because he significantly contributed to the conception of the multicarrier modulation elements of claim 10 of the 210 Patent.  Dr. Petrovic clearly testified that he conceived of the multicarrier modulation disclosures in the 210 Patent.  Tr. Tran. 11/14/2014 (morning) at 138:7-141:13.  And Dr. Petrovic's testimony was corroborated by two of the named inventors on the 210 Patent.  In particular, inventor Mr. Hays testified that Dr. Petrovic "had a ***significant part***" in "the multi-carrier modulation descriptions in the 210 and 403 Patents."  Tr. Tran. 11/10/2014 (afternoon) at 134:16-21.  Similarly, inventor Mr. Cameron testified that Dr. Petrovic contributed to

"developing the multi-carrier modulation aspects" of the 403 and 210 Patents.   Tr. Tran. 11/14/2014 Tr. (morning) at 149:10-14.   Apple's technical expert Mr. Lanning therefore concluded that Dr. Petrovic made a significant contribution to the conception of claim 10 of the 210 Patent, and therefore should have been named an inventor on the 210 Patent.   Tr. Tran. 11/14/2014 (afternoon) at 63:5-12.

MTel did not dispute that Dr. Petrovic contributed to the multicarrier modulation aspects of the 210 claims.  Instead, MTel's expert only offered legally irrelevant rebuttal points.  *See* Tr. Tran. 11/17/2014 (morning) at 41–45.  First, Dr. Kesan pointed out that during prosecution of the 210 Patent, the prosecuting attorney removed Dr. Petrovic as a listed inventor.  *See id.* at 42:22–43:25.  But that is not an indication that such removal was proper.  Second, Dr. Kesan discussed testimony by Dr. Petrovic that multicarrier modulation is "not the invention" of the 210 Patent. *See id.* at 44:3-11.  But the fact that there are other elements of the claims (*i.e.*, that multicarrier modulation alone was not the entire invention) is not dispositive of improper inventorship—it is whether there is a contribution to the conception of at least part of the invention.  *See Fina Oil*, 123 F.3d at 1473.  Finally, Dr. Kesan testified that "Dr. Petrovic himself doesn't claim to be the inventor of the 210 Patent."  Tr. Tran. 11/17/2014 (morning) at 44:12-13.  However, Dr. Petrovic was never asked this question, nor is there a requirement that Dr. Petrovic affirmatively state that he is an inventor.  All that is required is that he contributed in some significant manner to the conception of at least part of the invention.  *See Fina Oil*, 123 F.3d at 1473.

Apple therefore met its burden of showing that the 210 Patent is invalid for failing to list Dr. Petrovic as an inventor, and MTel's rebuttal was insufficient to overcome Apple's showing. Accordingly, Apple is entitled to JMOL that the 210 Patent is invalid.  Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence and Dr. Kesan's

legally irrelevant arguments unfairly and improperly confused the jury concerning the required elements of an improper inventorship claim.

### E.     Zabarsky Anticipates Claim 8 of the 428 Patent

The evidence presented at trial clearly showed that each element of claim 8 of the 428 Patent (DX-6) is disclosed by the Zabarsky patent (DX-112, U.S. Pat. No. 4,644,351, "Zabarsky"), thereby invalidating claim 8.[5]  No reasonable jury could have concluded otherwise. MTel's only counter-argument misinterprets terminology clearly defined in Zabarsky.

### 1.     Zabarsky Discloses Each Element of Claim 8

Apple's expert identified the disclosure of each and every limitation of claim 8 of the 428 Patent in Zabarsky.  First, Zabarsky discloses a two-way communication system including the step of transmitting a data message from a network operations center to a mobile unit, as recited in step (a) of claim 8.  Tr. Tran. 11/14/14 (morning) at 32:24–35:11; DX-112 at Fig. 2, 3:28-45. MTel did not dispute this.  *See* Tr. Tran. 11/17/2014 (morning) at 23:20–26:24.

Second, Zabarsky discloses receiving at the network operations center a data acknowledgment message from the mobile unit acknowledging receipt of the data message, as recited in step (b) of claim 8.  Tr. Tran. 11/14/14 (morning) at 35:13–36:5; DX-112 at 3:62-65. MTel did not dispute this.  *See* Tr. Tran. 11/17/2014 (morning) at 23:20–26:24.

Third, Zabarsky discloses transmitting a polling sequence (the claimed "probe message") from the network operations center to the mobile unit, if, after transmitting a data message to the mobile unit, no data acknowledgment message is received at the network operations center, as recited in step (c) of claim 8.  Tr. Tran. 11/14/14 (morning) at 36:7–37:19; DX-112 at 7:16-23,

---

[5] The Zabarsky patent issued on February 17, 1987, which is more than one year before the filing date of the asserted 428 Patent.  Therefore Zabarsky qualifies as prior art to the 428 patent under 35 U.S.C. § 102(b), which MTel did not dispute.

10:53-57.  In line with the Court's construction of "probe message" ("a message that is generated to locate a mobile unit"), Apple's expert testified that Zabarsky's polling sequence is a message generated to locate a mobile unit.  *See id.*  In fact, Zabarsky explicitly discloses that "pager location is a key element in the operation of a personal message service."  DX-112 at 10:53-56.

Fourth, as recited by step (d) of claim 8, Zabarsky discloses marking, at the network operations center, a message as undelivered (*i.e.*, missed) if, after transmitting the polling sequence (*i.e.*, the claimed "probe message") to the mobile unit, no acknowledgment is received to the polling sequence (*i.e.*, "no probe acknowledgement message is received at the network operations center," as claimed), and then storing the undelivered message at the network operations center, as recited by step (e).  *See* Tr. Tran. 11/14/14 (morning) at 38:1–39:12; DX-112 at 7:16-23, 10:46-52.  Specifically, Zabarsky clearly states that after the "pager is polled in every zone in the paging central site" by the "polling sequence," "[i]f no acknowledgement is received, the message is stored as will be described later."  DX-112 at 7:18-23; *see also* Tr. Tran. 11/14/14 (morning) at 38:1–39:12.  Apple's expert explained that Zabarsky's system also "marks" such messages as undelivered, as claimed.  *See id.* at 38:13–39:3. And Apple's expert confirmed what Zabarsky makes clear, namely that such an "acknowledgement" would be ***to the polling sequence*** (*i.e.,* to the claimed "probe message,"), making the "acknowledgement" the claimed "probe acknowledgement message."  *See id.*  Apple therefore met its burden of proving that Zabarsky anticipates claim 8 of the 428 Patent.

### 2.     MTel's Only Rebuttal Was Based On Improper and Incorrect Extrinsic Definitions

MTel's rebuttal was based entirely on Dr. Kesan's attempt to define the term "polling sequence" in a way contrary to how Zabarsky itself uses that term.  Dr. Kesan only disputed that Zabarsky discloses claim 8's "probe message" and "probe acknowledgment message"—he did

not dispute that Zabarsky discloses the remaining elements of claim 8.  *See* Tr. Tran. 11/17/2014 (morning) at 23:20–26:24.

First, Dr. Kesan disputed that Zabarsky's polling sequence discloses the claimed "probe message."  Dr. Kesan testified regarding various extrinsic definitions of "poll" and "polling," but such definitions are completely divorced from how the Zabarsky reference uses the term "polling sequence."  As explained above, Zabarsky's "polling sequence" is clearly "a message that is generated to locate a mobile unit," which meets the Court's construction for "probe message" and therefore discloses that claim limitation.  MTel cannot rely on extrinsic definitions of "poll" and "polling" to alter Zabarsky's disclosure.  Moreover, for purposes of infringement, MTel asserted that a message is a "probe message" so long as it is acknowledged, and as explained above Zabarsky is clear that its polling sequence can be acknowledged by a mobile unit.

Second, Dr. Kesan testified that Zabarsky does not disclose the claimed "probe acknowledgment message" because his extrinsic understanding of "polling" supposedly informs him that polling does not "have an acknowledgment signal back to it."  *See* Tr. Tran. 11/17/2014 (morning) at 24:20-22.  Again, MTel's reliance on extrinsic evidence was irrelevant and improper as Zabarsky *explicitly* discloses that the system can transmit an "acknowledgment" to the polling sequence as detailed above.  *See* DX-112 at 7:18-23; *see also* Tr. Tran. 11/14/14 (morning) at 38:1–39:12.

Apple therefore met its burden of showing how Zabarsky anticipates claim 8 of the 428 Patent, and MTel did not offer sufficient rebuttal evidence.  No reasonable jury could have found claim 8 of the 428 Patent valid over Zabarsky, and Apple is entitled to JMOL.  Apple alternatively moves for a new trial because the jury's verdict was against the weight of the

evidence and MTel's arguments unfairly and improperly confused the jury concerning the subject matter disclosed in the Zabarsky reference.

### F.        Kane 635 Anticipates Claims 1 and 8 of the 946 Patent

#### 1.        Kane 635 Discloses Each Element of Claims 1 and 8

The evidence presented at trial clearly showed that each and every element of claims 1 and 8 of the 946 Patent (DX-7) is disclosed by the Kane 635 Patent (DX-119, U.S. Pat. No. 5,315,635, "Kane 635"), thereby invalidating claims 1 and 8.[6]  No reasonable jury could have concluded otherwise.

Apple's expert Dr. Kelly identified each and every limitation of claims 1 and 8 in Kane 635.  First, Dr. Kelly explained that the steps of claim 8 "correspond to the parts of the apparatus claim in claim 1."  Tr. Tran. 11/13/14 (afternoon) at 173:9-23.  Dr. Kelly then explained how the limitations of both claims are disclosed in Kane 635.  Specifically, Dr. Kelly testified that Kane 635 discloses a mobile unit for transmitting and receiving messages that includes a receiver (including a paging receiver and a modem) and a display for displaying messages.  Tr. Tran. 11/14/14 (morning) at 11:23–13:1; *id.* at 13:8-23 (citing DX-119 at 4:10-15, Fig. 1, 5:33-38). Dr. Kelly further explained that the user of the mobile unit can manipulate buttons or switches to request retransmission of a message block (which Dr. Kelly explained is a portion of a displayed message) and that the mobile unit will receive those retransmitted messages.  Tr. Tran. 11/14/14 (morning) at 13:25–18:6 (citing DX-119 (Kane 635) at 7:28-35, 15:67–16:8, 14:29-36 and DX-7 (946 Patent) at 4:41-43).  Thus, Dr. Kelly testified that it was his opinion that claims 1 and 8 of

---

[6] The Kane 635 patent was filed on September 30, 1992, which is before the September 21, 1993 filing date of the 946 Patent (and before the November 12, 1992 filing date of the application from which the application that led to the issuance of the 946 Patent was a continuation-in-part). Therefore, Kane 635 qualifies as prior art to the 946 Patent under 35 U.S.C. § 102(e), which MTel did not dispute.

the 946 Patent are invalid as anticipated by Kane 635.  Tr. Tran. 11/14/14 (morning) at 8:20-23; *id.* at 18:12-17.

### 2.      MTel's Only Rebuttal Was Based On Nonexistent Claim Limitations

MTel's expert Dr. Kesan argued that Kane 635 did not anticipate claims 1 and 8 because Kane 635 does not allow a user to "pick and choose" the parts of the message for which retransmission is requested.  *See* Tr. Tran. 11/17/14 (morning) at 21:20-25; *see also, e.g.*, *id.* at 16:17–17:2, 21:26–23:19, 56:24–57:2, 57:14–61:11.

Dr. Kesan's argument appears to apply to the "switch actuatable to specify a portion of the displayed message for which a user desires retransmission from the communications network" limitation of claim 1 (limitation 1(d)) and the "receiving an indication of a portion of the displayed message for which a user desires retransmission" limitation of claim 8 (limitation 8(d)).  However, neither of these limitations includes a requirement that the user have the ability to "pick and choose" the portion of the message that is requested for retransmission.  Instead, as MTel applied the limitation to the accused products, these limitations simply require giving the user the ability to initiate a retransmission sequence, *e.g.*, by pressing the request retransmission button described in the 946 Patent specification. *See, e.g.*, Tr. Tran. 11/13/14 (afternoon) at 167:15–168:16 (Apple expert Dr. John Kelly discussing DX-7 (946 Patent) at 17:10-18 and explaining that the 946 Patent describes requesting retransmission of a portion of a message by pressing a request retransmission button).  Because the request retransmission button described in the specification could not allow a user to "pick and choose" the portions of the message for which retransmission is requested, it is axiomatic that limitations 1(d) and 8(d) do not require giving the user this ability.  Accordingly, Dr. Kesan's rebuttal argument is irrelevant.

Dr. Kesan also argued that Kane 635 does not anticipate "because the claims require user choice on what portions to receive, and Kane forces full reconciliation."  Tr. Tran. 11/17/14

(morning) at 23:3-19.   But in Kane 635, a user can initiate a reconciliation sequence that transmits at least the message data part of a message corresponding to a missed message, which Dr. Kesan did not contest.   Tr. Tran. 11/17/14 (morning) at 58:25–59:7.   This is all that claims 1 and 8 require.

Therefore, MTel's rebuttal case—which is entirely based on nonexistent claim limitations—is legally insufficient to rebut Apple's *prima facie* case that Kane 635 anticipates claims 1 and 8, as discussed above.   *See, e.g.*, *Verdegaal Brothers*, 814 F.2d at 632. Accordingly, no reasonable jury could have found claims 1 and 8 of the 946 Patent valid over Kane 635, and Apple is entitled to JMOL.   Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence and Dr. Kesan's legally irrelevant arguments unfairly and improperly confused the jury concerning the required elements of claims 1 and 8 of the 946 Patent.

### G.      The Will Patent Anticipates Claim 19 of the 506 Patent

The evidence presented at trial clearly showed that the Will Patent (DX-78, U.S. Patent No. 5,588,009, the "Will Patent") discloses each and every element of claim 19 of the 506 Patent (DX-4), thereby anticipating claim 19.   No reasonable jury could have concluded otherwise.   As explained below, MTel's own expert admitted that the Will Patent discloses the one claim limitation that MTel argued was absent from the Will Patent.[7]

Apple's expert identified each and every element of claim 19 of the 506 Patent in the Will Patent.   Tr. Tran. 11/14/2014 (morning) at 101:7–109:12.   First, the Will Patent discloses a message terminal for use in an electronic messaging network.   DX-78 at Figure 32 (depicting a

---

[7] The Will Patent was filed more than two years before the filing date of the 506 Patent, and therefore qualifies as prior art under 35 U.S.C. § 102(e), which MTel did not dispute at trial.   *See* Tr. Tran. 11/17/14 (morning) at 76:20-25.

communications unit); Tr. Tran. 11/14/2014 (morning) at 102:18–103:11.   Second, the Will Patent discloses a memory storing a file of canned messages and message codes and a file of canned multiple response options and response codes.   DX-78 at 12:62-65, 25:45-52, 26:36-40, 27:66-28:2, Figs. 3, 30, 33; Tr. Tran. 11/14/2014 (morning) at 103:12–109:9.   Apple's expert Mr. Stillerman explained that Figure 3 of the Will Patent discloses the required memory: "[Figure 3] is a component block diagram of what's inside the communications unit…. There's something called RAM and PROM, so those are – those are memories."  Tr. Tran. 11/14/2014 (morning) at 107:24–108:5.

Third, the Will Patent discloses means for retrieving the file of canned messages and the file of canned multiple response options from the memory as construed by the Court, which Mr. Stillerman identified as the CPU, memory, and system bus.   DX-78 at Figs. 3, 4, 32; Tr. Tran 11/14/2014 (morning) at 107:19–109:9.   Fourth, the Will Patent discloses a display for displaying the canned messages and the multiple response options in the retrieved file, which Mr. Stillerman identified as the Liquid Crystal Display.   DX-78 at Figs. 3, 4, 32, 33; Tr. Tran. 11/14/2014 (morning) at 102:18–105:7, 107:15–109:9.

Fifth, the Will Patent discloses means for selecting one of the canned messages and at least one of the multiple response options appropriate for the selected canned message for communication to a designated other message terminal as construed by the Court.   DX-78 at 2:57-60, Figs. 3, 4, 32, 33; Tr. Tran. 11/14/2014 (morning) at 102:18–109:12.   In particular, Mr. Stillerman identified the thumb wheel, cursor, and selection key as satisfying the structure required by the "means for selecting…" claim element.   Tr. Tran. 11/14/2014 (morning) at 108:20–109:9.   Sixth, the Will Patent discloses a transmitter for transmitting the message code assigned to the selected canned message and the response code assigned to the at least one

multiple response option over a communications link of the network, which Mr. Stillerman identified as the infrared emitter of the communications unit.  DX-78 at Fig. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 107:24–108:12.  Apple therefore met its burden of establishing that the Will Patent anticipates claim 19 of the 506 Patent.

The only limitation of claim 19 that MTel argued was absent from the Will Patent was transmitting both a message code and response code at the same time.  Tr. Tran. 11/17/2014 (morning) at 28:2-10, 30:9-13.  Apple's expert, however, clearly identified in the Will Patent a disclosure of sending response options with a canned message.  *See* DX-78 (Will Patent) at 26:36-40; *see* Tr. Tran. 11/14/2014 (morning) at 104:19–105:7 (discussing *id.*, Fig. 33). Furthermore, when asked whether the Will Patent does in fact disclose sending both a message code and response code, MTel's expert later agreed that it did in fact disclose it.  *See* Tr. Tran. 11/17/2014 (morning) at 77:21-24.  Thus, MTel's own expert admitted that the Will Patent discloses the one claim element that MTel argued was absent.  Accordingly, no reasonable jury could have concluded that claim 19 of the 506 Patent is not anticipated by the Will Patent, and Apple is entitled to JMOL.  Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence.

## H.     The Will Patent in Combination with Unicode Renders Claim 8 Obvious

As explained by Apple's technical expert, the Will Patent in combination with Unicode (DX-66 and DX-67)[8] discloses each and every element of claim 8 of the 506 Patent.  Tr. Tran. 11/14/2014 (morning) at 102:18–113:21.  First, the Will Patent discloses maintaining a file of canned messages and message codes at each of a first terminal, second terminal, and network operation center.  DX-78 at 12:62-65, 25:45-52, 26:36-40, 27:66–28:2, Figs. 3, 30, 33; Tr. Tran.

---

[8] Unicode was first published in 1991, and is therefore prior art under 35 U.S.C. § 102(b), which MTel did not dispute.  *See* DX-66.004; Tr. Tran 11/17/2014 (morning) at 77:25-78:2.

11/14/2014 (morning) at 102:18–107:14.   Second, the Will Patent discloses selecting an appropriate canned message from the second file for transmission to the second terminal.   DX-78 at 25:45-52, 26:36-40, 27:66-28:2, Figs. 3, 4, 32; Tr. Tran. 11/14/2014 (morning) at 102:18–109:9.   Third, the Will Patent discloses sending the message code assigned to the selected canned message to the network operation center.   DX-78 at 11:63-65, 25:45-52, 26:36-40, Figs. 3, 4, 12, 30, 33; Tr. Tran. 11/14/2014 (morning) at 102:18–106:18, 107:24–108:12.   Fourth, the Will Patent discloses retrieving a selected canned message from a file using an assigned message code.   DX-78 at 12:62-65, 25:45-52, 26:36-40, 27:66–28:2; Figs. 3, 4, 32; Tr. Tran 11/14/2014 (morning) at 102:18–109:24.   Fifth, the Will Patent describes displaying the selected canned message retrieved from the file of canned messages and message codes.   DX-78 at Figs. 3, 4, 32, 33; Tr. Tran. 11/14/2014 (morning) at 102:18–103:17, 107:15–109:9.

The only element of claim 8 of the 506 Patent that MTel argued was absent from the Will Patent was relaying the message code from the Network Operation Center to the second terminal.   Tr. Tran. 11/17/2014 (morning) at 27:18–28:1.   As Mr. Stillerman explained, the concept of relaying a code instead of the message from one device to another over a network was well known in the art before the 506 Patent.   *See* Tr. Tran. 11/14/2014 (morning) at 77:14–82:11, 102:18–113:21.   Mr. Stillerman further explained that to the extent that the Will Patent does not disclose relaying a code between devices, it would have been obvious in view of Unicode, which does disclose relaying a code rather than a character from one device to another across a network.   Tr. Tran. 11/14/2014 (morning) at 110:4–113:21 (…It would have been obvious, yes. Somebody could have used the teachings of the Will Patent and used the teachings of [Unicode] for…relaying codes across the network.").   Mr. Stillerman further explained that one of ordinary skill would have been motivated to combine the Will Patent and Unicode to arrive at claim 8.

Tr. Tran. 11/14/2014 (morning) at 112:4–113:8.   Apple therefore met its burden of demonstrating that claim 8 of the 506 Patent was obvious.

MTel's rebuttal consisted of a conclusory statement by MTel's expert that "Unicode makes no difference…you would still be not relaying the code."[9]   Tr. Tran. 11/17/2014 (morning) at 31:5-17.  However, MTel's expert agreed that Unicode teaches relaying a code.  Tr. Tran. 11/17/2014 (morning) at 80:13-16.  Accordingly, both Apple's expert and MTel's expert agreed that Unicode discloses a claim element that MTel argued was absent from the Will Patent (relaying a code from one device to another across a network).   Furthermore, MTel failed to provide any evidence to rebut Apple's evidence that it would have been obvious to combine the Will Patent and Unicode.  Accordingly, Apple is entitled to JMOL that claim 8 of the 506 Patent is invalid as obvious.  Apple alternatively moves for a new trial because the jury's verdict was against the weight of the evidence.

---

[9] MTel's expert also opined that the combination of the Will Patent and Unicode is deficient because it would result in a system that lacked, *inter alia*, a master file and added parameters. Tr. Tran. 11/17/2014 (morning) at 32:6-14.  But these distinctions are unrelated to any limitation of claim 8 or whether one of ordinary skill could have combined the Will Patent and Unicode, and are therefore wholly irrelevant.

Dated: December 19, 2014

OF COUNSEL:

    Brian E. Ferguson
    Anish R. Desai
    David M. DesRosier
    Christopher T. Marando
    Megan H. Wantland
    Christopher Pepe
    WEIL GOTSHAL & MANGES LLP
    1300 Eye Street NW, Suite 900
    Washington, DC 20005
    (202) 682-7000
    (202) 857-0940 FAX
    brian.ferguson@weil.com
    anish.desai@weil.com

    Garland Stephens
    WEIL GOTSHAL & MANGES LLP
    700 Louisiana, Suite 1700
    Houston, TX 77002-2755
    (713) 224-9511 FAX
    garland.stephens@weil.com

    Anne M. Cappella
    Jill J. Schmidt
    WEIL GOTSHAL & MANGES LLP
    201 Redwood Shores Parkway
    Redwood Shores, CA 94065
    (650) 802-3000
    (650) 802-3100 FAX
    anne.cappella@weil.com
    jill.schmidt@weil.com

Respectfully submitted,

By: */s/ Anish R. Desai*_____
    Eric H. Findlay
    State Bar No. 00789886
    Brian Craft
    State Bar No. 04972020
    FINDLAY CRAFT, P.C.
    102 North College Avenue
    Suite 900
    Tyler, TX 75702
    (903) 534-1100
    (903) 534-1137 FAX
    efindlay@findlaycraft.com
    bcraft@findlaycraft.com

    **COUNSEL FOR DEFENDANT
    APPLE INC.**

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on December 19, 2014, I electronically filed the

foregoing with the Clerk of Court using the CM/ECF system, which will send notification of

such filing via electronic mail to all counsel of record.

Daniel R. Scardino, Esq.
Craig S. Jepson, Esq.
REED & SCARDINO LLP
301 Congress Avenue, Suite 1250
Austin, TX 78701
Tel. (512) 474-2449
Fax (512) 474-2622
MTELSamsungAppleTeam@reedscardino.com

Deron Dacus, Esq.
THE DACUS FIRM, P.C.
821 ESE Loop 323, Suite 430
Tyler, Texas 75701
Tel. and Fax: (903) 705-1117
ddacus@dacusfirm.com

*Attorneys for Mobile Telecommunications Technologies, LLC*

*/s/ Anish R. Desai* ____
Anish R. Desai